## CLARK et al. v. NATIONAL BANK OF KANSAS CITY.

(Circuit Court of Appeals, Fifth Circuit. February 12, 1895.)

### No. 332

MORTGAGE—TIME OF TAKING EFFECT.

A deed of trust or mortgage was executed and placed on record by the mortgagor on July 23d, but neither the trustee nor the beneficiary was informed of its existence or assented to it until July 25th. *Held*, that the deed did not take effect until July 25th.

The appellee, the National Bank of Kansas City, instituted this suit in the circuit court of the United States in and for the Northern district of Texas, on the equity side of the docket, on May 23, 1894, against Dorr Clark; D. C. Plumb, George Ware, John P. Allison, and Albert L. Richardson, to recover of said respondents two tracts of land, to wit: First tract: A survey of 327.68 acres, known as "Survey No. 29," located by virtue of certificate No. 379, issued to the Houston Tap & Brazoria Railway Company, and patented to Joseph R. Anderson by virtue of letters patent No. 460, vol. 12, and located in Clay county, state of Texas. Second tract: Survey No. 30, certificate No. 379, Houston Tap & Brazoria Railway Company, located in Clay county, state of Texas.

Complainant alleges, in substance, as follows: That on the 23d day of July, 1887, E. F. & W. S. Ikard, a firm composed of E. F. Ikard and W. S. Ikard, were the owners of the above-described lands, and at that date said lands were incumbered for the sum of $853.11, which was paid off December 4, 1890, by respondents, and it is admitted that respondents are entitled to be reimbursed for said payment; that on July 19, 1887, E. F. Ikard executed to W. S. Ikard a power of attorney, authorizing him to sell any land belonging to the firm of E. F. & W. S. Ikard; that on July 23, 1887, E. F. & W. S. Ikard, acting by W. S. Ikard, a member of said firm, executed to M. Ikard, trustee, a deed of trust to secure the National Bank of Kansas City in the payment of $30,000, which deed of trust was duly acknowledged and recorded July 23, 1887, at 3 o'clock p. m.; that said deed of trust was regularly foreclosed on July 31, 1888, and the complainant was the purchaser; that respondents, on or about September 1, 1887, entered upon and took possession of said land; that the Merchants' National Bank recovered a moneyed judgment in the district court of Tarrant county, Tex., against the firm of E. F. & W. S. Ikard, and E. F. and W. S. Ikard individually; that, at the time of the institution of said suit of the Merchants' National Bank against E. F. & W. S. Ikard et al., the plaintiff caused a writ of attachment to be issued, on July 22, 1887, to Clay county, Tex., against E. F. & W. S. Ikard, which was by the sheriff of Clay county, Tex., levied on the land in controversy at 11 o'clock p. m. on the night of July 23, 1887; that the return on said writ of attachment shows that said levy was made at 2 o'clock p. m. on July 23, 1887, which is not correct, but was really made at 11 o'clock on

July 23, 1887; that defendants claimed said land under and through the regular foreclosure of said attachment lien made on July 31, 1888. There were some other averments tending to show jurisdiction in equity. Respondents answered under oath, and denied that said deed of trust was ever delivered to the National Bank of Kansas City, or any one for it, and they also denied that it was ever delivered to M. Ikard, the trustee. The answer alleged the defendants' grantors purchased said land under the judgment foreclosing said attachment lien, and thereby obtained the title under said levy of said attachment; that they purchased said land innocently and in good faith, believing that said levy was made at 2 o'clock p. m. on July 23, 1887, as is shown by the return on said writ of attachment, and did not know that it was not made at said time, as shown in the return; that the agents of the National Bank of Kansas City knew at or about the time said levy was made that the recital in the levy was not true, and that said levy was made at 11 o'clock p. m. on July 23, 1887, and they knew that other people were liable to purchase same, believing said recital to be true; that said respondents paid off and discharged the lien that was on said land. They also set up that E. F. & W. S. Ikard in January, 1888, conveyed said land to J. H. Campbell, and that these respondents also claim by regular chain of title under said Campbell. They also pleaded the three and five years' limitation, as well as four years' limitation. After replication and evidence taken, this cause was heard on July 11, 1894, before the circuit court at Dallas, and resulted in a decree for complainant for the land, but requiring that it pay into the registry of the court, for the benefit of respondents, the sum of $853, with interest at 8 per cent. from December 4, 1890, within 90 days, at the hazard of losing the land.

D. T. Bomar, for appellants.

A. K. Swann, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and TOUL-MIN, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). There are numerous assignments of error, but, under the view we take of the case, only the first, to wit: "Because, as is shown by the record, the deed of trust under which complainant claims was voluntarily made and put on record by W. S. Ikard without the knowledge, consent, or procurement of the complainant bank, or any one acting for it, and that same was not known to complainant at all until July 25, 1887, which was subsequent to the date of the levy of the attachment as actually made,"—need be considered. The record titles were all proved as alleged in the complainant's bill and the defendants' answers. It was admitted that the levy of the attachment in the case of the Merchants' National Bank of Ft. Worth against E. F. & W. S. Ikard et al. on the lands in controversy was made substantially as charged in complainant's bill, to wit, that, while the sheriff of Clay county received the writ at 2 o'clock and 20 minutes p. m. on July 23, 1887, he only indorsed the levy upon the attachment after 6 o'clock p. m. on the 23d day of July, 1887, completing the indorsement at about 11 o'clock of the same day, and that the deed of trust granted by E. F. & W. S. Ikard in favor of the complainant was filed for registration in the clerk's office of the county court of Clay county, Tex., at 3 o'clock p. m., July 23, 1887; the only contested fact being as to when the deed of trust of E. F. & W. S. Ikard to the complainant was accepted by the beneficiary thereof, it being conceded that the trustee in

said deed had no notice thereof until July 25, 1887, two days after
the levy of the attachment. The complainant contends that the
deed of trust was delivered to its agent, one J. W. T. Gray, and was
accepted by him, and by him delivered for record on and before
3 o'clock p. m. July 23d. The defendants contend that the said
Gray was not the agent of the complainant, and that he did not ac-
cept said deed of trust for and on behalf of the complainant.

The testimony on the subject is given by the president of the
National Bank of Kansas City, J. S. Chick, and by J. W. T. Gray.
Chick testifies as follows:

"J. W. T. Gray had authority to receive and accept the deed of trust dateo
on or about July 23, 1887, executed by W. S. Ikard for the firm of E. F. &
W. S. Ikard in favor of the plaintiff, to secure an indebtedness of thirty
thousand dollars ($30,000). He had authority to receive and accept said deed
of trust for and on account of the National Bank of Kansas City, Missouri,
plaintiff in the above-entitled cause. It was through Mr. J. W. T. Gray that
the loan to E. F. & W. S. Ikard was made. He came to our bank, and in-
duced us to make the loan. He did the same thing as to some other loans
that we made about the same time to some cattle men in and about Hen-
rietta, Texas. It was on the strength of his statement to us that we parted
with our money. We knew Mr. Gray, and had much confidence in him;
and we fully expected Mr. Gray to look after our matters, and to protect
us in case anything happened in the Ikard or other transactions in and
about Henrietta, Texas. He was authorized to do this, and he had given us
assurances that he would look after any interests we had there, and under
this general authority and understanding he took the mortgage or deed of
trust in question. Mr. Gray had authority to do anything that was necessary
to protect our interests in case of an emergency in the Ikard matter or any
other matter. He was on the ground, and was expected by us to take such
steps as might be necessary to secure us in case it was required. Under this
general authority, as I have stated, he did accept for us the deed of trust in
question, and we ratified his action in the matter immediately. XQ. 1. If,
in answer to the foregoing direct interrogatories, you have stated that said
J. W. T. Gray had authority to receive and accept said deed of trust for the
plaintiff bank, then please state whether or not said Gray did accept and re-
ceive said deed of trust for said bank, and how you know this. A. As I
have stated, Mr. J. W. T. Gray did have authority to receive and accept the
deed of trust for said bank, and wired us to that effect immediately upon
its acceptance,—that he had accepted it."

In a subsequent deposition, he again testifies:

"At the time this loan was made, J. W. T. Gray came to me, and stated
that the Ikards wanted to make the loan. I talked this matter over with Mr.
Gray, and told him I would make the loan. Gray was a negotiator between
the bank and the Ikards. I do not remember what my information was as
to the connection the Ikards had with the bank of which Mr. Gray was cash-
ier. At the time the loan was made, Gray agreed to look after this loan and
others that were negotiated at the same time; and the loan of Belcher and
Babb, as well as the Ikard loan, he secured at the same time, and, as I have
heretofore stated, was fully authorized to protect us in case of an emergency.
It was in the National Bank of Kansas City, Jackson county, Missouri,
that Mr. Gray agreed to do this for us. At that time we did not anticipate
trouble, but the loan was a large one, and made at some distance from this
city. Mr. Gray was on the ground, and knew about the transactions, and
we thought he could look after it better than anybody else in case an emergen-
cy should arise."

Gray's testimony is as follows:

"On the 23d day of July, 1887, I resided at Henrietta, Texas, and was cash-
ier of the Henrietta National Bank. E. F. & W. S. Ikard was a cattle firm

composed of E. F. and W. S. Ikard, and they were each directors of said bank, and W. S. Ikard was vice president of said bank. I sustained no relationship to them beyond that of being an officer in the same bank with them. I sustained no relationship to the National Bank of Kansas City with reference to any notes due by the said E. F. & W. S. Ikard to said National Bank of Kansas City, beyond the fact that I assisted the Ikards in obtaining the loan from said bank. I know nothing with reference to the execution of said trust deed. As to the delivery of it, will say that on the 23d day of July, 1887, W. S. Ikard handed to me a package of trust deeds. Among them was one or more securing the Henrietta National Bank in payment of moneys due by him to said bank, as well as by himself and brother. There were other papers in the package, the contents of which I did not then know, or at least, if I did, I do not now remember. I now understand that the trust deed in question was among the package of papers above referred to. I accepted the trust deed securing the Henrietta National Bank, as its representative, and had the other papers recorded with them at the instance of Mr. Ikard. In having all the papers recorded except those securing the Henrietta National Bank, I acted as the representative of Mr. Ikard, and at his request, in having them recorded."

## On cross-examination he testified, further:

"XQ. Is it not a fact that Mr. Chick, president of said National Bank of Kansas City, authorized you to take, receive, and accept any additional security to what they had for said debt prior to the making of the deed of trust mentioned in the 3d direct interrogatory, and that, acting under said instructions, did you not take the said deed of trust, so mentioned, and accept the same for said bank, and did you not place the same in the hands of S. M. Sears, with instructions to take it to the clerk's office, and file on Saturday, July 23, 1887? State fully just what instructions you had with reference to receiving said deed of trust or other security, and from whom did you receive such instructions, and what relations did such persons have with the National Bank of Kansas City. In answering these interrogatories, you will bear in mind that the deed of trust referred to is the only deed of trust which was made by E. F. & W. S. Ikard about the time of the failure of E. F. & W. S. Ikard and of the Henrietta National Bank. A. My recollection now is that on the day the bank closed up, which was the 25th of July, 1887, I received a message from J. S. Chick, president of the National Bank of Kansas City, as well as messages from other banks, asking me to see that their interests did not suffer. At that time I was overwhelmed with the affairs of my own bank, which had closed up on account of the failure of a number of its officers and directors; and while I would have been more than glad to have done anything in my power to protect the National Bank of Kansas City, as well as any other bank or banker, as a matter of courtesy and friendship, I had so much on my hands, in looking after the affairs of our own bank, that I could not undertake the matter of looking after the interests of other banks. And, besides, I was informed by W. S. Ikard that they had already protected all their creditors, which included the National Bank of Kansas City. Hence I did not accept said trust deed securing the National Bank of Kansas City, as a representative of said bank. I handed the package of papers given to me by W. S. Ikard to S. M. Sears, with instructions to take to the clerk's office and file. XQ. Is it not a fact that you had authority from the National Bank of Kansas City to collect the indebtedness it held against said E. F. & W. S. Ikard, or to take such steps as were necessary or proper to secure said indebtedness, and did you not have authority to look after and protect the interests of the said National Bank of Kansas City with reference to its business in Clay county? A. It is not a fact that I had authority from the National Bank of Kansas City, or any other bank, to collect for them, except in the due course of business between banks. This paper was not in our hands for collection, and was not due, as I now remember. My recollection of the instructions, as before stated, is that on the 25th of July, 1887, the National Bank of Kansas City wired me in effect to see that their interests did not suffer; that immediately thereafter, or at least as soon as he could get there, O. H. Dean, their attorney, came to

Henrietta, representing said bank and other banks, and took charge of the matter of looking after the interests of said bank."

We find in the record no circumstances tending to throw further light upon the question, and our conclusion, from the testimony above recited, is that the Kansas City National Bank fails to show that there was an acceptance on its behalf of the deed of trust granted by the Ikards on the 23d day of July, 1887. If it be conceded, against the positive evidence of Gray, that he was, nevertheless, the agent of the National Bank of Kansas City on the 23d of July, 1887, even then it appears that he did not accept the deed of trust for his principal; for, although the deed was handed him by Ikard, he did not know nor was he informed of its contents.

It is well settled in Texas that no lien upon real property is acquired by levy of an attachment under the laws of Texas until the levy is actually indorsed on the writ. Sanger Bros. v. Trammell, 66 Tex. 361, 1 S. W. 378, and cases there cited. Therefore, the defendant's title, based on the lien acquired by the levy of the attachment issued in the suit of the Merchants' National Bank against the Ikards, did not attach to the property in controversy until 11 o'clock p. m., July 23, 1887.

The next question is when the trust deed or mortgage from Ikards to the National Bank of Kansas City took effect. It was filed for registration in the proper office at 3 o'clock p. m. of July 23, 1887, but was not assented to by either the beneficiary or the trustee until July 25, 1887. In Wallis v. Taylor (decided in February, 1887) 67 Tex. 431, 3 S. W. 321, the supreme court of the state of Texas declared that "no valid mortgage can exist in the absence of the consent of the parties to the contract"; citing authorities from Maine, Iowa, Wisconsin, and Massachusetts. In Milling Co. v. Eaton, 86 Tex. 401, 25 S. W. 614, the question is again considered by the supreme court of the state of Texas, and the whole question as to the taking effect of the general assignments, particular assignments, and mortgages with or without the assent of the beneficiaries or trustees is considered upon principle and authority; and the court again decided that "the existence or nonexistence of a mortgage contract must depend on principles applicable to other contracts, and to their existence assent of parties is essential." As the question here relates to and affects the transfer of the title to lands in the state of Texas, the decisions of the supreme court of that state as to the necessity of the acceptance by the parties to a mortgage, in order that the mortgage shall take effect, are probably controlling, but our examination of the law of the case brings us to the same conclusion. It follows that in the case in hand, as the mortgage or deed of trust in favor of the National Bank of Kansas City was not accepted by the beneficiary or trustee therein until after the levy of the attachment in the case of the Merchants' National Bank of Ft. Worth against the Ikards, the lien acquired by the attachment must prevail.

The decree of the circuit court is reversed, and the cause is remanded, with instructions to enter a decree dismissing the bill.